**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

_____

ANDREW PERRONG
1657 THE FAIRWAY #131
JENKINTOWN, PA 19046

        Plaintiff Pro-Se.

v.

NATURAL SYNTHETICS INC D/B/A ITSME
874 WALKER RD. STE C.
DOVER, DE 19904

AND

AAKASH SASTRY
222 E 17TH ST. APT 3
NEW YORK, NY 10003

     Defendants.

Case No.  **20-cv-4056**

JURY TRIAL DEMANDED

**COMPLAINT**

**Preliminary Statement**

1.      Plaintiff Andrew Perrong ("Plaintiff"), brings this action under the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, a federal statute enacted in response to widespread public outrage about the proliferation of intrusive, nuisance telemarketing practices. *See Mims v. Arrow Fin. Servs.*, *LLC*, 132 S. Ct. 740, 745 (2012).

2.      Natural Synthetics, Inc and Aakash Sastry ("Natural Synthetics," "Sastry," or "Defendants") sent pre-programmed telemarketing text messages to Plaintiff without his consent, which is prohibited by the TCPA.

1

3.      The Plaintiff never consented to receive such automated messages, which were placed to him for telemarketing purposes, specifically to advertise and encourage Plaintiff to download Defendants' telephone app.

### Parties

4.      Plaintiff Andrew Perrong is a Pennsylvania resident, and a resident of the Eastern District of Pennsylvania. His mailing address is 1657 The Fairway #131, Jenkintown, PA 19046.

5.      Defendant Natural Synthetics is a Delaware corporation with its principal place of business in New York, NY. The Defendant engages in telemarketing in this district, as well as into Pennsylvania, as it did with the Plaintiff. Its address for service of process is 874 Walker Rd. Ste C, Dover, DE 19904.

6.      Defendant Aakash Sastry is the owner and sole employee of Natural Synthetics, and is, by admission, responsible for its TCPA compliance and marketing strategy. His mailing address is 222 E. 17th St. Apt 3, New York, NY 10003.

### Jurisdiction & Venue

7.      The Court has federal question subject matter jurisdiction over these TCPA claims pursuant to 28 U.S.C. § 1331. *Mims v. Arrow Fin. Services, LLC*, 132 S. Ct. 740 (2012).

8.      The Court has supplemental subject matter jurisdiction over the related state law claims, which form part of the same case or controversy pursuant to 28 U.S.C. § 1367(a).

9.      Venue is proper pursuant to 28 U.S.C. § 1391(b)(2) because Defendants reside in this District, and all Defendants are residents of the State of New York.

### The Telephone Consumer Protection Act

10.      In 1991, Congress enacted the TCPA to regulate the explosive growth of the telemarketing industry. In so doing, Congress recognized that "[u]nrestricted telemarketing . . .

2

can be an intrusive invasion of privacy [.]" Telephone Consumer Protection Act of 1991, Pub. L.

No. 102-243, § 2(5) (1991) (codified at 47 U.S.C. § 227).

<u>The TCPA Prohibits Automated Telemarketing Calls and Text Messages</u>

11.    The TCPA makes it unlawful "to make any call (other than a call made for

emergency purposes or made with the prior express consent of the called party) using an

automatic telephone dialing system or an artificial or prerecorded voice … to any telephone

number assigned to a … cellular telephone service…or any service for which the called party is

charged for the call."  *See* 47 U.S.C. § 227(b)(1)(A)(iii).

12.    Text messages are treated as "calls" for the purposes of the TCPA. *Duran v. La

Boom Disco, Inc.*, 955 F.3d 279, 281 n.4 (2d Cir. 2020).

13.    The TCPA provides a private cause of action to persons who receive calls in

violation of 47 U.S.C. § 227(b)(1)(A). *See* 47 U.S.C. § 227(b)(3).

14.    The TCPA also makes it unlawful to violate any of its implementing provisions

codified in 47 C.F.R. § 64.1200, and provides a private cause of action to person who receive

calls in violation of this subsection. *See* 47 U.S.C. § 227(c)(5).

15.    In 2013, the FCC required prior express written consent for all autodialed or

prerecorded telemarketing calls ("robocalls") to wireless numbers, services for which the called

party is charged for the call, and residential lines. Specifically, it ordered that:

> [A] consumer's written consent to receive telemarketing robocalls must be signed
> and be sufficient to show that the consumer:  (1) received "clear and conspicuous
> disclosure" of the consequences of providing the requested consent, i.e., that the
> consumer will receive future calls that deliver prerecorded messages by or on behalf
> of a specific seller; and (2) having received this information, agrees unambiguously
> to receive such calls at a telephone number the consumer designates.[] In addition,
> the written agreement must be obtained "without requiring, directly or indirectly,
> that the agreement be executed as a condition of purchasing any good or service.[]"

*In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991,*
27 F.C.C. Rcd. 1830, 1844 (2012) (footnotes omitted).

The Growing Problem of Automated Telemarketing

16.     "Robocalls and telemarketing calls are currently the number one source of
consumer complaints at the FCC." Tom Wheeler, *Cutting Off Robocalls*, FCC, (July 22, 2016,
10:30 AM), https://www.fcc.gov/news-events/blog/2016/07/22/cutting-robocalls
[https://archive.is/w2afC] (statement of FCC chairman).

17.     "The FTC receives more complaints about unwanted calls than all other
complaints combined." Staff of the Federal Trade Commission's Bureau of Consumer
Protection, *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of
1991*, Notice of Proposed Rulemaking, CG Docket No. 02-278, at 2 (2016),
https://www.ftc.gov/system/files/documents/advocacy_documents/commentstaff-ftc-bureau-
consumer-protection-federal-communications-commission-
rulesregulations/160616robocallscomment.pdf.

18.     In fiscal year 2017, the FTC received 4,501,967 complaints about robocalls,
compared with 3,401,614 in 2016. Fed. Trade Comm'n, *FTC Releases FY 2017 National Do-
Not-Call Registry Data Book and DNC Mini Site* (Dec. 18, 2017), https://www.ftc.gov/news-
events/press-releases/2017/12/ftc-releases-fy-2017-nationaldo-not-call-registry-data-book-dnc
[https://archive.is/oPZSW].

19.     *The New York Times* recently reported on the skyrocketing number of robocall
complaints and widespread outrage about illegal telemarketing. Tara Siegel Bernard, *Yes, It's
Bad. Robocalls, and Their Scams, Are Surging*, N.Y. Times (May 6, 2018),
https://www.nytimes.com/2018/05/06/your-money/robocalls-rise-illegal.html

[https://archive.is/mS9Fb]; *see also* Katherine Bindley, *Why Are There So Many Robocalls? Here's What You Can Do About Them*, Wall St. J. (July 4, 2018, 10:30 PM), https://www.wsj.com/articles/why-there-are-so-many-robocalls-heres-what-you-can-do-about-them-1530610203 [https://archive.is/V2UYp].

20.     Industry data shows that the number of robocalls made each month increased from 831 million in September 2015 to 4.7 billion in December 2018—a 466% increase in three years. *U.S. Endures 4.7 Billion Robocalls in July, According to YouMail Robocall Index*, YouMail (Aug. 6, 2019, 9:00 AM), https://www.prnewswire.com/news-releases/us-endures-4-7-billion-robocalls-in-july-according-to-youmail-robocall-index-300895976.html [https://archive.is/pnU5s].

21.     According to online robocall tracking service "YouMail," 5.6 billion robocalls were placed in October 2019 at a rate of approximately 180.6 million per day. *Robocall Index*, YouMail, https://robocallindex.com/ [https://archive.is/fwZD8]. In 2019, YouMail's robocall totals exceeded 58.5 billion. *Historical Robocalls By Time*, YouMail, https://robocallindex.com/history/time [https://archive.is/XWefY].

22.     The FCC also has received an increasing number of complaints about unwanted calls, with 150,000 complaints in 2016, 185,000 complaints in 2017, and 232,000 complaints in 2018. *Consumer Complaint Data Center*, FCC, www.fcc.gov/consumer-help-center-data [https://archive.is/wip/ojuBF].

The TCPA Imposes Personal Liability on Those Who Commission Telemarketing Calls

23.     Under the TCPA, an individual such as Sastry may be personally liable for the acts alleged in this Complaint pursuant to the Communications Act of 1934, of which the TCPA is a part, which reads, inter alia: "[T]he act, omission, or failure of any agent, or other person

acting for or employed by any common carrier or user, acting within the scope of his

employment, shall in every case be deemed to be the act, omission, or failure of such carrier or

user as well as of that person." 47 U.S.C. § 217.

24.     This Court has held that individuals may be personally liable for violations of the

TCPA when they had direct, personal participation in or personally authorized the violative

conduct. *Bais Yaakov of Spring Valley v. Graduation Source, LLC*, No. 14-CV-3232 (NSR),

2016 WL 1271693, at *6 (S.D.N.Y. Mar. 29, 2016).

## Factual Allegations

25.     Defendants own and operate an iPhone app called "ItsMe," which is advertised as

an app which is used to "meet people as your avatar." *See* https://itsme.cool/

[https://archive.is/OW1QL].

26.     To generate new downloads and users of the app, Defendants rely on

indiscriminate telemarketing via text messaging.

27.     One of the telemarketing strategies used by Defendants requires potential users of

the app to provide the app access to the user's contact book before they can use it under the

guide of being able to find other friends on the app.

28.     In reality, providing this permission causes the user's contact book to be uploaded

to Defendants' Twilio account, which in turn sends out a pre-programmed text message blast

using the Twilio Text Message API to persons stored in the user's contact book, whether or not

they have an iPhone.

29.     Indeed, the app's reviews on Apple's App Store are filled with numerous one-star

comments from users which state that, after providing the app permission to access the user's

contact book, the app indiscriminately mass texts a link itself to all or most of the user's contacts

6

without the user's knowledge or consent. *See generally* Reviews of *Itsme: Make New Friends*, Apple, https://apps.apple.com/us/app/itsme-make-new-friends/id1289087191#see-all/reviews [https://archive.is/gnQtC].

30.     Defendants maintain no record of which user is alleged to have or initiated the "invitation," because the app harvests contact books indiscriminately, imports them into a large database, and mass-mails itself to the user's contacts, usually without the user's consent, and certainly not with the recipient's consent.

31.     The Twilio Text Message API is an ATDS that boasts the ability to send messages using artificial intelligence "bots" that can send up to one billion messages at once. *Programmable SMS*, Twilio, https://www.twilio.com/sms [https://archive.is/QnmNf].

32.     ItsMe's malware-like behavior is reminiscent of the mass-mailing e-mail worms of the late '90s and early 2000s, where an e-mail would spread automatically to a user's contact book when an action was performed in an attempt to read a purported message, such as a card or love letter.

33.     Particularly ironic in this time of COVID-19, ItsMe's marketing strategy relies on the app to "go viral" through replication using text message spam in order to expand its user base. *See* Lars Ljungholm (u/eljungholm), *ItsMe App, Is it a Scam?*, Reddit (Apr. 17, 2020 7:53 PM EST), https://www.reddit.com/r/Scams/comments/g3dhk1/itsme_app_is_it_a_scam/ [https://archive.is/XMIcD].

34.     Neither ItsMe nor Sastry are registered to conduct telemarketing in Pennsylvania, despite so doing, in direct violation of the Pennsylvania Telemarketer Registration Act. 73 Pa. Cons. Stat. § 2241 (2020).

The Text Messages to the Plaintiff, Mr. Perrong

35.      Plaintiff Perrong is a "person" as defined by 47 U.S.C. § 153(39).

36.      Mr. Perrong's cellular residential telephone number is (215) 208-XXXX (the "208 Number").

37.      Mr. Perrong's private telephone number is (215) 791-XXXX (the "791 Number"). Mr. Perrong is charged for every text message sent and received using this number.

38.      Both numbers are on the National Do-Not-Call Registry, as well as the Pennsylvania Do-Not-Call Registry.

39.      On May 18, 2020 at 12:53 AM, Mr. Perrong received a pre-programmed text message on the 208 Number from the number 858-434-5905 which read, "Hey Andrew, your friend invited you to chat on Itsme: http://apps.apple.com/app/id1289087191 💫."

40.      On May 18, 2020 at 12:54 AM, a minute later, Mr. Perrong received a pre-programmed text message on the 791 Number from the number 858-434-5817 which read, "Hey Andrew, your friend recommended you to join Itsme: http://apps.apple.com/app/id1289087191 💫."

41.      It is incongruous that any user of the app, if any, that knew Plaintiff would simultaneously take affirmative action to text both of Plaintiff's telephone numbers, at the same time, at 12:53 in the morning, especially given Plaintiff's position as a consumer protection advocate.

42.      Instead, the messages were sent through and utilized an artificial intelligence and pre-programmed automated message technology known as the Twilio API.

43.      Mr. Perrong never consented to receive these text messages, either through the use of automated means or otherwise.

8

44.     Mr. Perrong spoke with Defendant Sastry in an attempt to get more information about Defendants' marketing strategy and to attempt to resolve the matter prior to filing. Sastry admitted that he was responsible for the message program, explained that it used the Twilio API, admitted that his use of the service without Mr. Perrong's consent was a "legal grey area," and promised to send Mr. Perrong a copy of ItsMe's Do-Not-Call policy, which Mr. Perrong still has not received as of the date of filing.

45.     Mr. Perrong was harmed by these messages. They deprived Mr. Perrong of legitimate use of his phones because the phone line was tied up during the process of its receipt and his privacy was improperly invaded. They used up storage space, bandwidth, and electricity. Mr. Perrong was charged for the message sent to the 791 Number. Moreover, these messages injured Mr. Perrong because they were frustrating, obnoxious, annoying, were a nuisance and disturbed the solitude of Mr. Perrong.

**Defendants' Liability for the Telemarketing Messages**

46.     It is unclear at this stage how Defendants exactly initiated the messages at issue.

47.     If the Defendants initiated the messages themselves, they are directly liable for any TCPA violations.

48.     Even if, however, Defendants sent the messages at the urging of a third party, they are still legally responsible for the calls.

49.     The Federal Communication Commission ("FCC"), the entity tasked with promulgating rules and orders related to enforcement of the TCPA, has explained that its "rules generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." *See In re Rules & Regulations Implementing the TCPA*, 10 F.C.C. Rec. 12391, 12397 (1995).

50.     In its January 4, 2008 ruling, the FCC reiterated that a company on whose behalf a telephone call is made bears the responsibility for any violations. *Id.* (specifically recognizing "on behalf of" liability in the context of an autodialed or prerecorded message call sent to a consumer by a third party on another entity's behalf under 47 U.S.C. § 227(b)).

51.     On May 9, 2013, the FCC confirmed this principle in a Declaratory Ruling holding that sellers such as Defendants may not avoid liability by outsourcing telemarketing to third parties:

> [A]llowing the seller to avoid potential liability by outsourcing its telemarketing activities to unsupervised third parties would leave consumers in many cases without an effective remedy for telemarketing intrusions. This would particularly be so if the telemarketers were judgment proof, unidentifiable, or located outside the United States, as is often the case. Even where third-party telemarketers are identifiable, solvent, and amenable to judgment limiting liability to the telemarketer that physically places the call would make enforcement in many cases substantially more expensive and less efficient, since consumers (or law enforcement agencies) would be required to sue each marketer separately in order to obtain effective relief. As the FTC noted, because "[s]ellers may have thousands of 'independent' marketers, suing one or a few of them is unlikely to make a substantive difference for consumer privacy.

*In re* Dish Network Petition (May 2013 FCC Ruling), 28 F.C.C. Rec. 6574, 6588 (2013) (internal citations omitted).

52.     More specifically, the May 2013 FCC Ruling held that, even in the absence of evidence of a formal contractual relationship between the seller and the telemarketer, a seller is liable for telemarketing calls if the telemarketer "has apparent (if not actual) authority" to make the calls. *Id.* at 6586.

53.     The May 2013 FCC Ruling further clarifies the circumstances under which a telemarketer has apparent authority:

> [A]pparent authority may be supported by evidence that the seller allows the outside sales entity access to information and systems that normally would be within the seller's exclusive control, including: access to detailed

information regarding the nature and pricing of the seller's products and services or to the seller's customer information. The ability by the outside sales entity to enter consumer information into the seller's sales or customer systems, as well as the authority to use the seller's trade name, trademark and service mark may also be relevant. It may also be persuasive that the seller approved, wrote or reviewed the outside entity's telemarketing scripts. Finally, a seller would be responsible under the TCPA for the unauthorized conduct of a third-party telemarketer that is otherwise authorized to market on the seller's behalf if the seller knew (or reasonably should have known) that the telemarketer was violating the TCPA on the seller's behalf and the seller failed to take effective steps within its power to force the telemarketer to cease that conduct.

*Id.* at 6592.

54.     Finally, the May 2013 FCC Ruling states that called parties may obtain "evidence of these kinds of relationships . . . through discovery, if they are not independently privy to such information." *Id.* at 6592-93. Moreover, evidence of circumstances pointing to apparent authority on behalf of the telemarketer "should be sufficient to place upon the seller the burden of demonstrating that a reasonable consumer would not sensibly assume that the telemarketer was acting as the seller's authorized agent." *Id.* at 6593.

## Legal Claims

### Count One:
### Violation of the TCPA's Prohibition Against Telemarketing
### Via Pre-Programmed Message and ATDS

55.     Plaintiff Perrong incorporates the allegations from all previous paragraphs as if fully set forth herein.

56.     The foregoing acts and omissions of Defendants and/or their affiliates, agents, and/or other persons or entities acting on Defendants' behalf constitute numerous and multiple violations of the TCPA, 47 U.S.C. § 227(b), by making calls, except for emergency purposes, to

the telephone numbers of Plaintiff using an ATDS and/or artificial or prerecorded and preprogrammed message.

57.     As a result of Defendants' and/or their affiliates, agents, and/or other persons or entities acting on their behalf's violations of the TCPA, 47 U.S.C. § 227(b), Plaintiff is entitled to an award of $500 in damages for each and every call made to his telephone numbers using an ATDS and/or artificial or prerecorded and preprogrammed message in violation of the statute, pursuant to 47 U.S.C. § 227(b)(3)(B).

58.     Plaintiff is also entitled to and does seek injunctive relief prohibiting Defendants and/or their affiliates, agents, and/or other persons or entities acting on their behalf from violating the TCPA, 47 U.S.C. § 227(b), by making calls, except for emergency purposes, to any telephone numbers using an ATDS and/or artificial or prerecorded voice in the future.

59.     The Defendants' violations were negligent and/or knowing.

**Count Two:**
**Violation of the Pennsylvania Telemarketer Registration Act**
**73 Pa. Cons. Stat. § 2241**

60.     Plaintiff Perrong incorporates the allegations from all previous paragraphs as if fully set forth herein.

61.     The foregoing acts and omissions of Defendants and/or their affiliates, agents, and/or other persons or entities acting on Defendants' behalf constitute numerous and multiple violations of the Pennsylvania Telemarketer Registration Act ("PTRA"), 73 Pa. Cons. Stat. § 2241, including by making calls to Plaintiff's numbers, on the Pennsylvania Do-Not-Call registry, without registration and between the hours of 9:00 PM and 8:00 AM.

62.     As a result of Defendants' and/or their affiliates, agents, and/or other persons or entities acting on their behalf's violations of the PTRA, 73 Pa. Cons. Stat. § 2241, Plaintiff is

entitled to an award of $300 in damages for each and every call made to his telephone numbers in violation of the statute, pursuant to the Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 Pa. Cons. Stat. § 201.

63.     Plaintiff is also entitled to and does seek injunctive relief prohibiting Defendants and/or their affiliates, agents, and/or other persons or entities acting on their behalf from violating the PTRA in the future.

**Count Three:**
**Violation of the TCPA's Implementing Regulations**
**Codified at 47 C.F.R. § 64.1200**

64.     Plaintiff Perrong incorporates the allegations from all previous paragraphs as if fully set forth herein.

65.     The foregoing acts and omissions of Defendants and/or their affiliates, agents, and/or other persons or entities acting on Defendants' behalf constitute numerous and multiple violations of the TCPA, 47 U.S.C. § 227(c), codified at 47 C.F.R. § 64.1200, by, *inter alia*, refusing to scrub against the National Do-Not-Call registry, refusing to provide Mr. Perrong a copy of Defendants' Do-Not-Call policy, and making calls outside the hours of 8:00 AM and 9:00 PM, to Mr. Perrong's telephone numbers.

66.     As a result of Defendants' and/or their affiliates, agents, and/or other persons or entities acting on their behalf's violations of the TCPA, 47 U.S.C. § 227(c), Plaintiff is entitled to an award of $500 in damages for each and every call and violation made to his telephone numbers in violation of the TCPA's implementing regulations codified at 47 C.F.R. § 64.1200, pursuant to 47 U.S.C. § 227(c)(5)(B).

67.     Plaintiff is also entitled to and does seek injunctive relief prohibiting Defendants and/or their affiliates, agents, and/or other persons or entities acting on their behalf from

violating the TCPA, 47 U.S.C. § 227(c), by making calls in violation of any of the TCPA's implementing regulations in the future.

68.     The Defendants' violations were negligent and/or knowing.

## Relief Sought

WHEREFORE, Plaintiff requests the following relief:

A.     Injunctive relief prohibiting Defendants from calling telephone numbers advertising their goods or services using an ATDS and/or artificial or prerecorded voice, and/or in violation of the PTRA, and/or in violation of the TCPA's implementing regulations.

C.     Because of Defendants' violations of the TCPA's ATDS restrictions, Plaintiff Perrong seeks for himself $500 in damages for each violation or—where such regulations were willfully or knowingly violated—up to $1,500 per violation, pursuant to 47 U.S.C. § 227(b)(3).

D.     Because of Defendants' violations of the PTRA, Plaintiff Perrong seeks for himself $300 in damages for each violation, pursuant to 73 Pa. Cons. Stat. § 201-9.2(a).

E.     Because of Defendants' violations of the TCPA's implementing regulations, Plaintiff Perrong seeks for himself $500 in damages for each violation or—where such regulations were willfully or knowingly violated—up to $1,500 per violation, pursuant to 47 U.S.C. § 227(c)(5).

E.     Such other relief as the Court deems just and proper.

**Plaintiff requests a jury trial as to all claims of the complaint so triable.**

Dated: **May 26, 2020**

_____/s/_____
Andrew Perrong
*Plaintiff Pro-Se*
1657 The Fairway #131
Jenkintown, PA 19046
Phone: 215-791-6957
Facsimile: 888-329-0305
andyperrong@gmail.com